UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

D.L.,

        Plaintiff,

vs.

KALAMAZOO PUBLIC SCHOOLS,

        Defendant.

_____/

Case No. 1:22-cv-01208

Hon. Robert J. Jonker

Related Case No. 1:22-cv-00838

**DEFENDANT'S ANSWER AND
AFFIRMATIVE DEFENSES**

Defendant, Kalamazoo Public Schools (the "District"), by its counsel, Clark Hill, PLC, hereby submits its Answer and Affirmative Defenses in response to Plaintiff D.L.'s Complaint and states as follows:

## INTRODUCTION

1.      This is a special education case involving illiteracy. For years, Kalamazoo Public Schools (District) failed to evaluate D.L., misunderstood the nature of his disability, and thus failed to support him *appropriately*. Instead of reading at a level commensurate with his abilities, D.L. graduated high school at a third-grade reading level.

**ANSWER:**    Defendant District admits that this case involves special education for a student performing below grade level expectations and who was eligible under the Individuals with Disabilities Education Act ("IDEA") category of specific learning disability.  Defendant denies the remaining allegations contained in Paragraph No. 1 and leaves Plaintiff to his proofs.

2.        D.L.'s high school transcript shows 13 failed classes ("Fs") and 15 "passed" classes (all "Ds") – the "watered down" expectations expressly rejected in *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1,* 137 S. Ct. 988, 1000-01 (2017) (holding that IDEA requires a "markedly more demanding standard" of progress). Tragically, the school district recycled – literally cut and pasted – the same educational goals, with the same ineffective results, year after year after year. So, year after year, D.L. attended school without the functional ability to read or do basic math.

**ANSWER:**     Defendant District denies the characterization of D.L.'s transcript.  By way of example, during Plaintiff's senior year, D.L. earned 14 credits which included an award of an A- and Bs and Cs.  Defendant denies the remaining allegations contained in Paragraph No. 2 and leaves Plaintiff to his proofs.

3.        Had the District complied with its legal obligations and undertaken the proper educational evaluations and re-evaluations, required by the Individuals with Disabilities Education Act (IDEA) for students like D.L., and then provided him with the appropriate reading and social-emotional supports, including assistive technology, D.L. could have learned to read at an eight-grade level. For him, that would have been *meaningful progress* – a free *appropriate* public education (FAPE). Instead, by the time of his "graduation," at 18 years old, D.L. could barely divide or multiply, and he was reading at a *third-grade* level – far beneath what his actual abilities allow.

**ANSWER:**     The District complied with its legal obligations under IDEA and either conducted appropriate evaluations or concluded, as permitted by IDEA, that no further assessments were needed to determine D.L.'s continued eligibility or his educational needs.  Defendant denies the remaining allegations contained in Paragraph No. 3 and leaves Plaintiff to his proofs.

2

4.      D.L.  now  seeks  compensatory  education,  including  weekly  therapeutic interventions, with an intensive focus on reading and math instruction. D.L. additionally seeks economic damages for the loss of income due to the District's denial of a FAPE and discrimination under Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 *et seq.* This will afford him the ability to function fully in society and to have a productive career in the construction industry, as D.L. desires.

**ANSWER:**      Defendant  District  admits  that  Plaintiff  seeks  the  relief  set  forth  in Paragraph No. 4, but the District denies liability and further denies that Plaintiff is eligible for or entitled to the requested relief.

### PARTIES, JURISDICTION AND VENUE

5.      The Plaintiff is D.L., a student eligible under the IDEA with a specific learning disability. D.L. is also an individual with a "disability" within the meaning of Section 504 and the ADA, as multiple impairments substantially limit him in life activities including reading, learning, communicating and interacting with others. 28 C.F.R. § 35.108; 34 C.F.R. § 34.104.3.

**ANSWER:**      Admitted on information and belief.

6.      Defendant Kalamazoo Public Schools (District) is a local education agency (LEA) subject to the provisions of the IDEA. It was responsible for providing D.L. a FAPE under the IDEA. 20 U.S.C. §§ 1400-1419. The District is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 C.F.R. § 104.31 *et seq.*, and a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131 (1)(A), (B).

**ANSWER:**      Defendant District neither admits nor denies the allegations contained in Paragraph No. 6, to the extent it asserts a legal conclusion, rather than a factual allegation, which

does not require a response.  To the extent a response is required, it is admitted that the District is the recipient of federal funds and a public governmental entity.  The remaining allegations are only admitted to the extent that they accurately state governing law, and otherwise they are denied and Plaintiff is left to his proofs.

7.     D.L. brings this civil action against the District, having exhausted administrative prerequisites by filing a due process complaint against the Defendant under (IDEA), 20 U.S.C. § 1400 *et seq.*

**ANSWER:**     It is admitted that Plaintiff brings this civil action against the District after filing a due process complaint against the Defendant District under the IDEA.  Defendant District neither admits nor denies the remaining allegations contained in Paragraph No. 7, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.

8.     Jurisdiction is conferred upon this Court by 20 U.S.C. §§ 1415(i)(2)(A) and 1415(i)(3)(A), which provide the district courts of the United States with jurisdiction over any action brought under the IDEA, without regard to the amount in controversy. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, based upon the federal question raised herein, and under 28 U.S.C. § 1343, because this action is brought to vindicate Plaintiffs' civil rights under the IDEA, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act of 1973 (Section 504). Additionally, this Court has the authority to award any relief it deems appropriate, including injunctive relief under Fed. R. Civ. P. 65(a). 20 U.S.C. § 1415(i)(2)(C)(iii).  There is a present and actual controversy between the parties to this action. To the extent required by law, Plaintiffs have exhausted their administrative remedies as to the issues in this action.

4

**ANSWER:**    Other than the assertion of a lack of subject matter jurisdiction for the reasons set forth in the District's motion to dismiss (ECF No. 7), which motion was denied by the Court (ECF No. 15), Defendant does not challenge jurisdiction in this Court.

9.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as Plaintiff resided within the Western District of Michigan, and all events and omissions giving rise to this Complaint occurred in this district.

**ANSWER:**    Admitted.

## FACTS

10.    Plaintiff, D.L., has long had a specific learning disability (SLD), a qualifying condition under the IDEA.

**ANSWER:**    Admitted on information and belief.

11.    In school, D.L. was described as polite, socially engaged, and having a desire to succeed. However, these *outwardly* favorable traits masked his inward disability.

**ANSWER:**    The allegations in the first sentence of Paragraph No. 11 are admitted. Defendant District is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph No. 11 and, on that basis, denies the allegations and leaves Plaintiff to his proofs.

12.    D.L.'s brain does not hold onto sounds while he is reading words, a problem with his working memory. Instead of reading text, he scans lines for words he might recognize and then puts the sentence in his own words. And for information that D.L. can store, he has great difficulty *communicating that knowledge to others.* Similar to a stroke victim, D.L. "[has] information but [he] can't communicate it." Due Process Hr'g Tr. At 59, *D.L. v. Kalamazoo Pub. Schs.,* No. 21-027515 (Jan. 10, 2022).

5

**ANSWER:**      Defendant District is without sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph No. 12 and, on that basis, denies the allegations and leaves Plaintiff to his proofs.

13.     Tragically, from 2012 to 2021, the District failed to perform the evaluations necessary to fully comprehend the nature of D.L.'s specific learning disability. While it recognized his *eligibility* for special education services as a student with SLD, the lack of evaluations resulted in a foreseeable failure to deliver the appropriate *individualized* supports in school.

**ANSWER:**      Denied as untrue.

14.     As an example, as far back as 2012, the District had evidence of D.L.'s "high likelihood of attentional weaknesses in the academic setting," but failed to evaluate how D.L.'s executive functioning – his ability to control impulses, focus, and follow through on tasks – might affect his performance.

**ANSWER:**      Defendant District denies that there was any need for the District to conduct additional assessments beyond those in the underlying record to determine Plaintiff's academic needs.

15.     As a result, throughout his time at the District, D.L. had a hard time staying tuned in to classroom lectures and following directions, and these symptoms of his ADHD *compounded* the difficulties that he faced with his working memory in reading. Without appropriate evaluations, the District could not track how D.L.'s different disability-related conditions *interacted with each other* to create a unique learning profile.

**ANSWER:**      Defendant District is without sufficient information or knowledge to form a belief as to the truth of the allegations in the first sentence of Paragraph No. 15 and, on that basis,

denies the allegations and leaves Plaintiff to his proofs.  The allegations in the second sentence of Paragraph No. 15 are denied.

16.     By 2017, D.L.'s 9th grade year, the District no longer even performed perfunctory standardized assessments to understand D.L.'s performance in reading. And by 2018, it stopped performing them for math as well. The District stopped performing these assessments despite data showing that D.L. was falling further and further behind in both subjects when compared to his peers.

**ANSWER:**     Defendant District denies the allegation in Paragraph No. 16.  By way of example, in 2018, D.L. was administered the Northwest Evaluation Association ("NWEA") which targeted the Plaintiff's academic performance in mathematics, reading, language usage, and science.

17.     By 2021, when D.L. "graduated," his high school transcript showed 13 failed classes ("Fs") and 15 "passed" classes (all "Ds"). And even *those* were compromised, as D.L. relied on classmates simply to get by.

**ANSWER:**     Defendant District denies the allegations contained in the first sentence of Paragraph No. 17.  By way of example, during Plaintiff's senior year, D.L. earned 14 credits which included an award of an A- and Bs and Cs.  Defendant District is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph No. 17 and, on that basis, denies the allegations and leaves Plaintiff to his proofs.

18.     At the due process hearing, expert forensic examination of D.L.'s IEPs – the goals, the supports, etc. – revealed that the District had cut and pasted year after year after year. As one of D.L.'s expert witnesses explained: "[T]hings were copied and pasted at the beginning and

7

copied and pasted at the end…it's not like things changed from 2012 to 2020." Due Process Hr'g Tr. At 152, *D.L. v. Kalamazoo Pub. Schs,* No. 21-027515 (Jan. 10, 2022).

**ANSWER:**    Defendant District neither admits nor denies the allegations contained in Paragraph No. 18, to the extent that it characterizes or alleges specifics contained in the underlying administrative record, including in ALJ St. John's Decision and Order, which record speaks for itself.  To the extent that the allegations do not accurately characterize or allege facts relating to the underlying administrative record, they are denied.

19.    To the District, D.L.'s in-class data (grades, teacher reports, etc.) was reliable enough to justify all its cutting and pasting and repeating in his IEPs. But as the District continually failed to conduct full and appropriate *evaluations*, the District had the wrong picture of D.L. entirely. The wrong inputs produced wrong outputs.

**ANSWER:**    With regard to the first sentence of Paragraph No. 19, to the extent that it characterizes or alleges specifics contained in the underlying administrative record, including the Michigan Department of Education's initial finding that the IEPs were appropriate and again in ALJ St. John's Decision and Order finding the same, the record speaks for itself.  The District denies that it failed to conduct full and appropriate evaluations and leaves Plaintiff to his proofs.

20.    Testimony from a certified expert in pediatric neuropsychology stated that if the District had but performed basic psychoeducational evaluations, it would have uncovered data sufficient to understand D.L.'s unique learning profile. *See* Due Process Hr'g Tr. At 46, *D.L. v. Kalamazoo Public Schools,* No. 21-027515 (Jan. 10, 2022). By failing to perform the psychoeducational evaluations and by dodging the required re-evaluations for nine years, it was impossible for the District to understand D.L.'s true needs and deliver appropriate supports for a FAPE. Instead of accepting responsibility, the District concluded that the problem was *with the*

8

*student, not itself*, assuming he didn't want their support when D.L. was responding to their inappropriate supports consistent with the disabilities the District had failed to understand.

**ANSWER:**     Defendant District neither admits nor denies the allegations contained in Paragraph No. 20, to the extent that it characterizes or alleges specifics contained in the underlying administrative record, including in ALJ St. John's Decision and Order, which record speaks for itself.  To the extent that the allegations do not accurately characterize or allege facts relating to the underlying administrative record, they are denied.

21.     In June 2021, the District issued D.L. a high school diploma. Yet its own data demonstrated he was reading at a third-grade level, stagnant for years, when his *abilities* should have allowed him to reach at least an eighth-grade level.

**ANSWER:**     The allegations in the first sentence of Paragraph No. 21 are admitted. Defendant District is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph No. 21 and, on that basis, denies the allegations and leaves Plaintiff to his proofs.

22.     By failing to conduct comprehensive initial evaluations (as a baseline), the District long misunderstood D.L.'s abilities and the supports he needed. Later, by failing to perform the IDEA'S "triannual evaluations" (every three years), the District maintained its own misunderstanding. In fact, even the District admitted that *for nine years* it believed "no additional testing was required in order to redetermine [D.L.'s] eligibility for special education and related services."

**ANSWER:**     The allegations contained in the first two sentences of Paragraph No. 22 are denied.  The allegation contained in the third sentence is denied to the extent that Plaintiff alleges

9

that certain statements constituted admissions, which is a legal conclusion to which no response is required and, on that basis, the allegation is denied.

23.     In August of 2021, after his high school "graduation," D.L. was evaluated by an *independent* expert. At that time, he learned for the first time about the true nature and severity of his disabilities, the potential he had in reading and math, and the role appropriate reading interventions and assistive technology might serve in helping him achieve his potential.

**ANSWER:**     Defendant District is without sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph No. 23 and, on that basis, denies the allegations and leaves Plaintiff to his proofs.

24.     Appropriate evaluations, and the subsequent provision of appropriate reading supports and assistive technology, would have allowed D.L. to *express* his knowledge ("to share what he knows") rather than assuming he was deliberately shutting down. This, in turn, would have resulted in appropriately graduated IEPs – *appropriate* present levels, goals, and the supports to make meaningful progress in light of his circumstances – rather than blaming D.L. for his own lack of progress.

**ANSWER:**     Defendant District is without sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph No. 24 and, on that basis, denies the allegations and leaves Plaintiff to his proofs.

25.     Within two months of discovering the District's failures, on October 22, 2021, D.L. filed for due process for the denial of FAPE. *See* n. 2, *supra.*

**ANSWER:**     Admitted to the extent that Petitioner alleges that the underlying due process hearing was filed on October 22, 2021; however, to the extent that Petitioner characterizes the filing as predicated on any purported discovery on the part of D.L., Defendant District denies the

10

allegation as evidenced by the State Complaint filed with the Michigan Department of Education over the same issues on January 27, 2021, and Defendant leaves Plaintiff to his proofs.

26.     At the outset, the ALJ refused to consider a complete picture of D.L.'s circumstances by ruling that his remedy was artificially confined to a two-year period of time stretching from October 22, 2021 back to October 22, 2019 – two years prior to the date the Due Process Complaint was filed. This ruling was clear error as it ignored the "discovery rule" under the IDEA and the fact that it affords D.L. a remedy for the *entire deprivation* of FAPE, not just for the two-year period prior to the filing deadline.

**ANSWER:**     Defendant District neither admits nor denies the allegations contained in Paragraph No. 26, to the extent that it characterizes or alleges specifics contained in the underlying evidentiary administrative record, including in ALJ St. John's Decision and Order, which record speaks for itself.  To the extent that the allegation does not accurately characterize or allege facts relating to the underlying administrative record, it is denied.  In further response, Defendant District neither admits nor denies the allegations contained in the last sentence of Paragraph No. 26, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegation is denied and Plaintiff is left to his proofs.

27.     After a four-day hearing, including eight witnesses, the ALJ waited five months after final briefing to issue a decision. Having inappropriately limited the claims, the ALJ, like the District, then largely *blamed D.L.* for not learning, despite the lack of evaluations, the revolving door of IEPs, and the misunderstanding of D.L.'s support-needs. Accordingly, he appeals.

**ANSWER:**     It is admitted that the underlying administrative hearing was held over four days, and included testimony from at least eight witnesses, and that the ALJ issued a written

11

Decision and Order which, among other things, concluded that D.L. was responsible for certain actions and the related consequences, as more fully set forth in the ALJ's findings. In further response, Defendant District states that ALJ St. John's Decision and Order, and the underlying administrative record, speaks for itself.

## IDEA CLAIMS

### A. *Misunderstanding the Scope of FAPE Denial*

28. First, the ALJ deprived D.L. of an appropriate review of his case by misunderstanding the IDEA's statute of limitations and the application of the *discovery* rule. 20 U.S.C. § 1415(f)(3)(C). The ALJ apparently believed that misrepresentations or withholding of information by the District had to occur in order for evidence beyond the two-year statute of limitations to be considered. That is incorrect.

**ANSWER:** Defendant District neither admits nor denies the allegations contained in Paragraph No. 28, to the extent that it characterizes or alleges specifics contained in the underlying evidentiary administrative record, including in ALJ St. John's Decision and Order, which record speaks for itself. To the extent that the allegation does not accurately characterize or allege facts relating to the underlying administrative record, it is denied. In further response, Defendant District neither admits nor denies the allegations contained in Paragraph No. 28, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response. To the extent a response is required, the allegations are denied and Plaintiff is left to his proofs.

29. Students with disabilities are not disability experts or experts on the educational needs that are a result of their disabilities. Instead, they are reliant upon the *school district* to perform timely evaluations, including triannual reevaluations. When these do not occur, and when a student only learns much later – here in 2021 – of a district's failures to properly evaluate and

support his disabilities, the discovery rule affords a complete remedy. Courts have routinely ordered awards to remedy IDEA violations that occurred more than two years prior to the date of filing. *See Draper,* 518 F.3d at 1288 (rejecting school's argument that the student's parents ought to have known the school had misdiagnosed the student before the school's professionals knew and affirming compensation for all the years of deprivation); *Ligonier,* 802 F.3d at 620 (collecting cases).

**ANSWER:**     Defendant District neither admits nor denies the allegations contained in Paragraph No. 29, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegations are only admitted to the extent that they accurately re-state governing law, and otherwise they are denied and Plaintiff is left to his proofs.

### B.  *Failures to Evaluate Resulted in Inadequate IEPs (a Denial of FAPE)*

30.     Second, the Defendant failed in its ongoing duty to conduct comprehensive educational evaluations leading to inadequate IEPs, a denial of FAPE.

**ANSWER:**     Denied as untrue.

31.     Defendant's responsibility for initial evaluations and reevaluations includes determining "*the educational needs* of the child." 34 C.F.R. 300.305(a)(2)(i) (emphasis added). Put another way, both types of evaluations seek to understand (1) how a student's disability-related needs show up in the classroom as potential obstacles to progress and (2) what one could expect in terms of the student's *performance* based on the student's *abilities*.

**ANSWER:**     Defendant District neither admits nor denies the allegations contained in Paragraph No. 31, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegation is only admitted to

the extent that it accurately re-states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

32. Initial evaluations set a baseline, and re-evaluations allow for ongoing monitoring of progress. Should a set of IEP supports fail to produce appropriate progress, reevaluations can provide justification for adjusting course – i.e., a "*cogent and responsive explanation* for [school authorities'] decisions that shows the IEP is *reasonably calculated* to enable the child to make progress appropriate in light of his circumstances." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1,* 137 S. Ct. 988 1002 (2017) (emphasis added). For D.L., compounding failures yielded inadequate IEPs, largely cut-and-pasted through the years, and a multi-year denial of FAPE.

**ANSWER:** The last sentence in Paragraph No. 32 is denied. Defendant District neither admits nor denies the remaining allegations contained in Paragraph No. 32, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response. To the extent a response is required, the allegation is only admitted to the extent that it accurately re-states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

33. Had Defendant performed comprehensive *initial* evaluations in 2012, the Defendant would have determined the true nature of D.L.'s unique learning profile – the working memory difficulties, the large gap between his verbal and nonverbal intellectual functioning, and the executive functioning weaknesses. This, in turn, would have required Defendant to afford D.L. an "educational program reasonably calculated to enable [D.L.] to make progress appropriate in light of [his] circumstances," one that afforded him appropriate reading and other supports, along with assistive technology, tailored to his individual learning style. *Id.* In short, it would have enabled D.L. to learn to read and compute in accordance with his circumstances.

**ANSWER:** Denied.

14

34.    Instead, for the following nine years, Defendant not only failed to provide appropriate services tailored to D.L.'s disabilities, it never conducted *re-evaluations* either even though D.L. failed to make progress and fell further and further behind his peers. In fact, Defendant never used any standardized means of simply *assessing* D.L.'s *performance* in reading after 2017, or his *performance* in math after 2018. In-class assignments are no substitute for appropriate evaluations or for appropriate standardized assessments, which seek to determine performance within a norm-referenced context of a student's national peers, not just his classmates. Throughout, D.L. was denied the appropriate supports and assistive technology for his learning profile because the District kept itself in the dark.

**ANSWER:**    Denied.

35.    Nor did Defendant conduct a *functional* evaluation for any behavioral issues. IDEA contemplates an appropriate education as having two primary domains – the academic (subject area mastery) and the functional (behavioral, social, and life skills). Behavior is a form of communication, and illiteracy would be an obvious source of frustration for any student. And it certainly was for D.L.

**ANSWER:**    The last sentence in paragraph 35 is denied.  D.L. did not exhibit behaviors in the education setting, or experience discipline due to behavior, during the 2020-2021 school year. Defendant District neither admits nor denies the remaining allegations contained in Paragraph No. 35, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegation is only admitted to the extent that it accurately re-states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

36.    Ultimately, the ALJ acknowledged that D.L. was *not* making progress and that the same IEP *was* being repeated. But the ALJ substituted "classroom performance and input from

teachers," as if those *were evaluations*. While classroom performance data will demonstrate how a student is currently doing, evaluations provide more pointed information on a student's level of functioning, how a student learns, and what their achievement potential is. Clearly, they are not the same.

**ANSWER:**     The first sentence in paragraph 36 is admitted to the extent that the ALJ found that D.L. did not make progress towards his goals of improving his math and reading skills to Plaintiff's full potential due, in part, to a lack of motivation, a lack of time while working full time during school hours, or by choosing to cheat by getting others to do his assigned work. Defendant District neither admits nor denies the remaining allegations contained in Paragraph No. 36, to the extent it asserts a legal conclusion and suggests that curriculum-based measurements are an invalid data point in the development of an appropriate IEP.

37.     In the end, the ALJ made the same mistake as the District: equating classroom performance and input from teachers with more robust measures of D.L.'s ability, needs, and performance – the special education evaluations required by law. While the teachers and the IEP Team understood D.L.'s *eligibility* for services based on a severe learning disability, that label, alone, did not address D.L.'s specific learning profile, how he learns – the appropriate reading and other supports, and assistive technology – that will allow him to make progress in light of his circumstances. The recycled IEPs did not deliver FAPE for D.L., and the results prove it.

**ANSWER:**     Denied.

38.     It is the District that is charged with the obligation to "conduct a full and individual initial evaluation … before the initial provision of special education and related services" and to reevaluate Plaintiff every three years after, to determine his disability-related needs in the

classroom, not just his continued eligibility. 34 C.F.R. §§ 300.301, 303. It failed to do so for *nine* years, denying D.L. a FAPE for the entire period.

**ANSWER:**     The last sentence of Paragraph No. 38 is denied as untrue. Defendant District neither admits nor denies the remaining allegations contained in Paragraph No. 38, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response. To the extent a response is required, the allegation is only admitted to the extent that it accurately re-states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

### C. *Blaming the Student with a Disability is No Defense*

39.     Petitioners presented ample evidence at the due process hearing of D.L.'s humiliation, and his struggles to survive in reading and math. Yet, despite four days of testimony, the ALJ delivered only 23 Findings of Fact.

**ANSWER:**     The allegation in the first sentence of Paragraph No. 39 is denied. Defendant District neither admits nor denies the remaining allegations contained in Paragraph No. 39, to the extent that it characterizes or alleges specifics contained in the underlying evidentiary administrative record, including in ALJ St. John's Decision and Order, which record speaks for itself. To the extent that the allegation does not accurately characterize or allege facts relating to the underlying administrative record, it is denied.

40.     Parroting a District theme, with no sensitivity to the extraordinary damage and humiliation of illiteracy, the ALJ said D.L. "cheated … to pass his class and graduate," and that D.L. "did not avail himself of the services that *were* offered" (emphasis added). Building on this blameworthy theme, the ALJ concluded D.L. "did not need additional services."

**ANSWER:**     Defendant District neither admits nor denies the allegations contained in Paragraph No. 40, to the extent that it characterizes or alleges specifics contained in the underlying

17

evidentiary administrative record, including in ALJ St. John's Decision and Order, which record speaks for itself.  To the extent that the allegation does not accurately characterize or allege facts relating to the underlying administrative record, it is denied.

41.     Not only is the harm of illiteracy well established legally, and through the expert witnesses in this case, but D.L. himself took the stand. He explained how he felt humiliated when, in response to ADHD-type behaviors, teachers asked him to read aloud and how other students would laugh at him. The ALJ's conclusion that D.L. "was simply not interested in earnestly attempting to do the assigned work" fundamentally misunderstands the IDEA.  The IDEA requires that students with disabilities be supported as *individuals*, and schools that fail to gain a working knowledge of such individual needs through standard evaluations, such as the District, ought not be rewarded.

**ANSWER:**     Admitted to the extent that D.L. testified in the underlying hearing. To the extent that it characterizes or alleges specifics contained in the underlying evidentiary administrative record, including in ALJ St. John's Decision and Order, that record speaks for itself. To the extent that the allegation does not accurately characterize or allege facts relating to the underlying administrative record - such as alleging that the District in seeking Plaintiff's input in the development of his own IEP failed to support the Plaintiff as an individual - it is denied.

42.     In sum, denying D.L. appropriate evaluations, improperly constructing IEPs with deficient supports, resulting in a shameful inability to read, is a *liability* of the District. It was inappropriate for the ALJ to disregard the testimony of experts and base his decision on his own opinion that the Plaintiff (who was provided *inadequate* supports) will not use *adequate* ones or that his only means for survival ("cheating") precludes him from receiving appropriately constructed IEPs and a FAPE as the IDEA requires.

CLARKHILL\31771\459024\271221659.v1-4/19/23

**ANSWER:**    Denied.

## SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C § 794, AND TITLE II OF THE ADA, 42 U.S.C. §§ 12131 et seq.

43.    Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

**ANSWER:**    Defendant District hereby incorporates its responses to the foregoing paragraphs as through fully restated and set forth herein.

44.    Pursuant to Section 504 and its regulations, "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

**ANSWER:**    Defendant District neither admits nor denies the allegations contained in Paragraph No. 44, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegation is only admitted to the extent that it accurately states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

45.    The regulations regarding Preschool, Elementary, and Secondary Education apply to "preschool, elementary, secondary, and adult education programs or activities that receive Federal financial assistance and to recipients that operate, or that receive Federal financial assistance for the operation of, such programs or activities." 34 C.F.R. § 104.31.

**ANSWER:**    Defendant District neither admits nor denies the allegations contained in Paragraph No. 45, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegation is only admitted to

CLARKHILL\31771\459024\271221659.v1-4/19/23

the extent that it accurately states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

46.     In general, "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).

**ANSWER:**     Defendant District neither admits nor denies the allegations contained in Paragraph No. 46, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegation is only admitted to the extent that it accurately states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

47.     Defendant is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under Section 504. 29 U.S.C. § 794.

**ANSWER:**     Admitted.

48.     D.L. is a person with a disability within the meaning of Section 504. 29 U.S.C. § 794.

**ANSWER:**     Admitted.

49.     Defendant failed to engage in evaluations and reevaluations as specified and required, thus violating Section 504. 34 C.F.R. § 104.35.

**ANSWER:**     Denied.

50.     Defendant has intentionally discriminated against D.L. in violation of Section 504 by failing to provide or ensure the provision of comprehensive educational evaluations resulting in a denial of a FAPE to D.L.

**ANSWER:**     Denied.

51.     Defendant had knowledge from 2012 that D.L. was exhibiting ADHD-type behaviors and had consistent data from past and present demonstrating that D.L. was not making progress. Therefore, the failure to conduct a psychoeducational evaluation that contained a cognitive functioning component demonstrates deliberate indifference.

**ANSWER:**     Denied.

52.     Defendant has otherwise intentionally discriminated against D.L. in violation of Section 504.

**ANSWER:**     Denied.

53.     As a direct and proximate cause of Defendant's violation of Section 504, Plaintiff has suffered substantial harm to, among other things, his educational experience and opportunity, academic and intellectual progress, and future earning capacity.

**ANSWER:**     Denied.

54.     Similarly, Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35. Moreover, Title II requires existing services to be "*equally* accessibly to people with communication disabilities." *K.M. ex rel. Bright v Tustin Unified Sch. Dist.,* 725 F.3d 1088, 1097 (9th Cir. 2013).

21

**ANSWER:**      Defendant District neither admits nor denies the allegations contained in Paragraph No. 54, to the extent it asserts a legal conclusion, rather than a factual allegation, which does not require a response.  To the extent a response is required, the allegation is only admitted to the extent that it accurately states governing law, and otherwise it is denied and Plaintiff is left to his proofs.

55.    Defendant is a public entity subject to Title II of the ADA, 42 U.S.C. § 12131.

**ANSWER:**      Admitted.

56.    D.L. is a person with a disability within the meaning of the ADA. 42 U.S.C. § 12102.

**ANSWER:**      Admitted.

57.    Defendant intentionally violated D.L.'s rights under the ADA and the regulations promulgated hereunder by excluding him from participation in and denying him the benefits of Defendant's services, programs, and activities, and by subjecting him to discrimination in violation of 42 U.S.C. § 12132.

**ANSWER:**      Denied.

58.    By failing to conduct comprehensive evaluations, Defendants failed to provide necessary communication accommodations that would allow D.L. to equally access his school work, resulting in intentional discrimination against D.L., in violation of 42 U.S.C. § 12132.

**ANSWER:**      Denied.

59.    As a direct and proximate cause of the Defendant's violations of the ADA, Plaintiff has suffered substantial harm to, among other things, Plaintiff's educational experience and opportunity, academic and intellectual progress, and future earning capacity. 42 U.S.C. §§ 12132, 12182.

**ANSWER:**    Denied.

**WHEREFORE**, Defendant ask that Plaintiff take nothing by way of the Complaint and that the case be dismissed, judgment be rendered for Defendant, and that Defendant be awarded all costs, attorneys' fees and such other relief as the Court may deem equitable and just.

## AFFIRMATIVE DEFENSES

Defendant, Kalamazoo Public Schools, by its counsel, Clark Hill PLC, hereby asserts and reserves the following affirmative defenses:

A.    To the extent that Plaintiff's claims under Section 504 and the ADA raise issues which were not addressed in the underlying administrative hearing conducted under IDEA, those claims are barred by Plaintiff's failure to exhaust administrative remedies under IDEA;

B.    Plaintiff's claims are barred by the Statute of Limitations;

C.    Plaintiff has failed to mitigate his damages, if any;

D.    Any damages complained of by Plaintiff were not proximately caused by Defendant;

E.    Plaintiff's legal allegations are conclusory in nature and fail to state sufficient facts and a claim upon which relief can be granted; and,

F.    Defendant reserves the right to amend its Answer, including additional Affirmative Defenses, upon completion of investigation and discovery of this cause.

**WHEREFORE**, Defendant ask that Plaintiff take nothing by way of the Complaint and that the case be dismissed, judgment be rendered for Defendant, and that Defendant be awarded all costs, attorneys' fees and such other relief as the Court may deem equitable and just.

CLARKHILL\31771\459024\271221659.v1-4/19/23

Dated:  April 19, 2023

CLARK HILL PLC

By: /s David W. Centner
     David W. Centner (P43071)
     Jordan M. Bullinger (P72441)
     Marshall W. Grate (P37728)
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
(616) 608-1100
jbullinger@clarkhill.com
dcentner@clarkhill.com
mgrate@clarkhill.com

*Attorneys for Defendant*

CLARKHILL\31771\459024\271221659.v1-4/19/23